All right, our fourth case for this morning is Mohamed Sarfaz against Judy Smith, warden. Mr. Luzak. May it please the court, your honors, my client, Mr. Sarfaz, has fundamental rights to present a defense and his right to a fair trial and to confront his accusers were violated by the Wisconsin court's application of the Rape Shield Law to bar him from presenting incredibly critical evidence in his defense. And I believe that I'd like to start by explaining why that evidence was so critical to his defense, because I believe that the Supreme Court of Wisconsin overgeneralized the use and the evidence. Now, as you do that, it would help me to get some sense of why the points you're making are different from the points that would normally be made by somebody who was blocked by a Rape Shield Law, because, you know, the Supreme Court has never said that these laws violate the Sixth Amendment confrontation rights or any such broad ruling. So that's a problem. Yes, I agree with you on that point as to the general application. But in this case, I believe that there was a violation under Chambers because first off, the Wisconsin Supreme Court never considered the Chambers argument that was made to the court, which is important in this case because of the way that the Wisconsin Supreme Court interpreted the third prong of the DeSantis test, which requires that this—they refer to it as a reverse 403 analysis, but it's really somewhat different from that because they put a lot of weight on looking at the general good or the government interest in weighing this evidence as being inherently prejudicial, so it already tips the scales, and then requires a defendant to establish that the probative value of that evidence is important enough— Right, it just flips the 403, you know, it's up to the defendant. That presumption is baked into all Rape Shield Laws. That's correct, Your Honor. But the difference in this case is that when looking at the probative value, the Wisconsin Supreme Court found that the acts, the prior consensual sexual acts that were attempted to be admitted into evidence were profoundly dissimilar in circumstances from non-consensual intercourse following a knife fight. But why isn't that a fact-based conclusion? I mean, I'm going to first make the comment that if you look at this—that's sort of flipping around—if you look at the Wisconsin Supreme Court's opinion, it's clear beyond any doubt that they know that they are dealing in part with a constitutional right to present a defense to confront adverse witnesses. They talk about that. And given all the things the U.S. Supreme Court has said, that the state Supreme Court doesn't even need to write that down, it seems to me that we are instructed to read this opinion by the Wisconsin Supreme Court as its considered opinion on these things. I know it doesn't have a separate section that's entitled Sixth Amendment and Chambers, but that's not necessary. I agree with that. However, in this case, there was no consideration. I believe Chambers acts as a backstop to the barring of evidence. So in this case, there was an application of using the Rape Shield Law to bar evidence. But you know, to take the Wisconsin Court's analysis within the confines of the Rape Shield Law, the prior acts were nonviolent, supposedly loving acts. They were fully consensual. This was an adult young woman at the time she comes from Pakistan with her father. They don't look at all like coming in, you know, with a mask on and a knife and blood all over the place and, you know, all the rest of the details of this assault. Well, Your Honor, that assumes that what she's saying is true. Well, there is blood all over the place. I mean, it seems quite a stretch to say that she staged all of that. Well, Your Honor, I believe that the issue of admitting this evidence really goes to the credibility of the two parties. And it's only marginal evidence, right? Because he gets evidence in about the nature of the relationship. It's really actually the final graphic details that are kept out. Well, they were allowed to admit evidence all the way up to the fact that Mr. Sarfraz's wife found both Ayan and him in bed with their pants down. Exactly. But they weren't able to fully explain the actual nature of their relationship. And I think... That's what I'm saying. Yes, the final... I'm not going to repeat it. It's in the briefs enough. But the final graphic details are, in fact, kept out. But why isn't that just a state court drawing reasonable evidentiary lines? Your Honor, I don't believe that it is a reasonable evidentiary line because they never considered the issue under Chambers. They gave it a very short shrift. They talked about it and mentioned that the Confrontation Clause is not absolute, that there are limits. But you agreed with me that they don't have to talk about it any more than they did. I thought you agreed with me. Maybe you didn't. I won't put words in your mouth. Well, I agree with you to a certain extent, Your Honor. In this court's case in Sussman, I believe that this court was looking at the issue of whether there was actual reasoned consideration. And I think when you look at the Supreme Court opinion in this case, there really wasn't reasonable consideration of the things that this court has looked at in both Cooch and in Sussman, where we're looking at whether the application to bar is really the first step. The second step would be reviewing whether under Chambers that evidence should be allowed in because of its importance that it plays. But what defense was he precluded from presenting because this particular evidence didn't come in? He presents evidence that it was an intimate relationship. Maybe it was just sitting in bed together without certain clothing, but he presents the gist that they had a loving relationship, and so it's inconsistent, he suggests to the jury, with the assault model. Well, I think when the jury was weighing the credibility, first off, the trial judge in this case allowed the jurors to submit questions. And one of the questions that the jurors submitted asked about what is the actual, have they had anything other than hugging and kissing as far as a sexual relationship? So, it obviously was something that was weighing on one juror's mind. And when it comes down to a credibility battle like this, to describe the reason or the probative value merely by saying that just because, like a propensity type argument under 404B, where just because she consented to these other sexual acts, well, then she consented in this case, that's not the real argument that we were making in this case. The probative value really is weighed in looking at the way that it fit into the entirety of his defense, because there was a piece missing, a very critical piece, which would have allowed the jury, and the Court of Appeals decision, the Wisconsin Court of Appeals decision, which is at page 167 of the separate appendix, explains why this evidence was so critical. And really, it goes... But, of course, the Wisconsin Supreme Court doesn't see it that way. And that's the court that we are responsible for looking at. I agree, Your Honor. But whenever the court looked at the DeSantis third prong and applied it in such a way to basically act as a bar, because I don't think there are really any scenarios where if you're looking at this general consent probative value, that because she consented on one occasion, she consented in another, that misses the point of actually weighing the importance that this evidence played in Mr. Sarfraz's defense, which goes to that he did not have to conceal his identity and force his way into the apartment, that they had discussed marriage, that they also... That she consented and perhaps initiated the sexual intercourse that occurred in this case. And so those are the reasons why I think it goes beyond just a general bar. And I think if you look at the Wisconsin Supreme Court opinion, that it sets up a standard that is very difficult for a defendant to meet. Thank you. Okay. Thank you. I'm sorry. May I? May I? How did Sarfraz explain at trial the lie about the bloody false claim that he was attacked by two African American males? Because that seems far more damaging to his case than any of the excluded evidence. Your Honor, I agree that is a bad fact. However, I think that that raises the importance and makes it even more probative and more necessary in order for him to receive a fair trial that this type of evidence would get into. Because he did lie, but he could still be found credible based on the other factors that are considered and the other evidence that would be in there. Thank you. Thank you.  May it please the Court. Mr. Sarfraz maintains that sexual fondling in a loving, romantic relationship that expressly excluded vaginal intercourse due to shared cultural taboos tended to prove that the victim consented to the violent vaginal intercourse after a knife fight and attempted strangulation of her on May 10, 2015. It was objectively reasonable for the trial judge to allow in evidence of their romantic relationship that included hugs and kisses, but to exclude under Wisconsin's rape shield law the sexual fondling that Mr. Sarfraz maintains occurred in that relationship. The Wisconsin Supreme Court acted in an objectively reasonable manner when it upheld that the low probative value of this evidence as to whether the victim consented to the violent vaginal intercourse on May 15, 2010 failed to substantially outweigh its presumed prejudicial impact under Wisconsin's rape shield law. So, Mr. Bryan, I would like your comment on what we've been talking about. The Wisconsin Supreme Court does drop the ball on the Sixth Amendment aspect. It mentions it, and then it turns to the Wisconsin rape shield law, and then it's as though it forgot that it was in there, and we don't know whether it thinks these are the same standards. If so, are they? Well, first of all, the way it was argued in the Wisconsin Supreme Court was essentially under the Wisconsin statutes and the Wisconsin case law, the Pulisano and the Jackson cases and the standards that are to be applied. And at paragraph 37 of the opinion, the Wisconsin Supreme Court clearly discusses both the federal and state constitutional protection and the right to present an offense to cross-examine and confront the accusers. Moreover, this court in Duncan v. Hepp, an opinion authored by Judge Evans, pointed out that the Pulisano test that the Wisconsin Supreme Court relied on here essentially tracks the federal constitutional test. And so I would suggest that the opinion does more than satisfy addressing the federal constitutional standard in order to comply with the ADPA and to deserve deference under it. The Pulisano line of cases is a chambers-based line of cases, and the court interprets the state constitution in a similar way to the federal constitutional right. Correct. Yes. So chambers is embedded in that line of cases and in fact is cited in the Wisconsin Supreme Court's decision in this case. It is. Yes. So it can't be said to have been overlooked. No, and as the Supreme Court said in early v. Packer, even when controlling Supreme Court cases are not cited or even discussed, that if the analysis tracks it, it's not an unreasonable application of those decisions that it deserves deference under the ADPA. And I would suggest that, and I would point out that the United States Supreme Court has never held a state's rape shield law unconstitutional. It upheld the Michigan law in Michigan v. Lucas as a reasonable policy decision to protect sexual assault victims from harassment, embarrassment. Well, we don't have an attack on the rape shield law. That's correct. So that's not really the issue. The issue is whether this was an unreasonable application of chambers. Right. The Harrington v. Richter presumption applies even if the court didn't separately analyze the federal claim. It was clearly aware of it. Right. And if the decision can be construed as a reasonable application of the Supreme Court's doctrine, then it's okay. Yes. Even if not separately analyzed. And I think just as this court did in Duncan v. Hepp and in the, I believe it's the Carlin decision preceding it, the Wisconsin Supreme Court, as in those cases, did not unreasonably apply chambers in Mississippi and Davis v. Alaska and any of the other controlling Supreme Court Sixth Amendment precedent which holds that evidence is, the Sixth Amendment does not necessarily require the introduction of irrelevant or highly prejudicial evidence. It only protects relevant evidence that is not outweighed by its prejudicial impact. This evidence, the state court's reason to conclude it, failed that test. And the court's decision obviously acknowledged that this evidence was material to the defense that the defendant was offering in the case and so recognized the right to present a defense principle and the decision turned on the balancing of the probative value against the inflammatory prejudicial effect in upholding the trial court's decision. And that's the same test as chambers. So unless that was unreasonable, which is a really steep standard. And I would refer this court to review the Pulitano decision itself, which at great length discusses the Sixth Amendment protections. I'm really familiar with that decision. Yes. And so I think the court more than adequately addressed the constitutional question, even though, as you point out, it wasn't set out in a separate section and could have been more clearly laid out. No, but as I also pointed out, they have a paragraph or so where they note that a Sixth Amendment decision is being made. You can't say that the court's unaware of that. Correct. They said so. Correct. And I would suggest that its application of the Pulitano test was, in essence, an application of the Sixth Amendment precedent upon which Pulitano relied, which is similar to how this court ruled in Dunlap v. Hepp. And so I would ask the court to affirm the reasonable decision of the district court. I think Judge Rovner may have a question for you. What should we make of the juror question about the extent of the relation? How should that play into the analysis? I don't think it should play at all. I think the jurors are allowed to ask questions. It doesn't mean that they're going to always ask relevant questions or pertinent questions. And oftentimes, I think jurors are wondering what's missing or what else happened, but evidence is excluded for all sorts of reasons, sometimes against the state under the Fourth Amendment, sometimes, like here, against the defendant under a rape shield law. The juror just can't ask that. He's not allowed to have an answer to that question. If you assume the trial judge's ruling is reasonable and correct. Of course, that question goes to the very heart of the appellant's argument, doesn't it? I guess it probably does. I can't speak for him, but I know he relied on that in his opening remarks. Again, I've never been on a jury. I've never sat in deliberations, and I don't know what kind of questions are asked during deliberations, but I would imagine that sometimes people touch on irrelevancies or matters that are too prejudicial and shouldn't be considered. Just the fact that this was asked in open court doesn't give it any greater stock than In fact, it might show how a jury could be misled, that if you did allow an evidence that they mutually fondled each other, and a jury, again, I don't think there's a logical connection between that and the violent vaginal intercourse that occurred here. The rape shield law is designed to disabuse jurors of making those kind of connections on peripheral matters that may be so prejudicial. Then, as I pointed out in my brief, that paints the victim here. If you put this in, it could paint her as some person of poor character who's out to have sex with married men against his wishes and things of that nature that are not pertinent to the whether this woman was sexually assaulted violently against her will on May 15, 2010. I would maintain that that question probably would be answered with, you are not to consider that, whether or not that occurred, period. All right. Thank you very much, Mr. O'Brien. Mr. Luzak. I just have one point. In the briefing at the Wisconsin Supreme Court, we discussed at length the Pulitzano test, which acts as a backstop, a chamber's backstop to if evidence is being barred, and that was not considered in this case at all. The factors, there's a lengthy set of factors that the court must consider. None of those were considered in this case, and I believe that that is truly where the harm is in this case is that there was no consideration. Well, this is where the Harrington v. Richter presumption comes in, that even if the court had said nothing whatsoever about chambers, we're to presume that it decided the issue on the merits if it was presented, and it was presented. Yes, it was. And then we're to imagine whether there are good reasons implicit in the court's decision to find it a reasonable application of the constitutional standard. Just very briefly to that point, the final factor that they considered, and if you look at the factors under DeSantis that they considered, they were different than the considerations in Pulitzano. So that is where I believe that the court failed to adequately address that issue. But they're not different from chambers. Well, they are somewhat. They're not materially different from chambers. They're somewhat different in the sense that they don't weight the scale against the admissibility, so it doesn't require the court to say that this is inherently prejudicial. So that is just an attack on the rape shield principle? No, it's not. There are certain instances where the rape shield law would properly bar evidence from getting in, but in a case like this where the assumption that it's being based off of, meaning what the probative value is being weighed against, is that assuming that there was a violent sexual encounter is going to be impossible for any defendant to meet because, of course, it's going to be dissimilar. That's the reason why you're attempting to admit that into evidence. Thank you. All right. Thank you very much.